HOGAN LOVELLS US LLP
Richard L. Stone (Bar No. 110022)
richard.stone@hoganlovells.com
Amy M. Gallegos (Bar No. 211379)
amy.gallegos@hoganlovells.com
Asheley G. Dean (Bar No. 245504)
asheley.dean@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California  90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

Attorneys for Defendant
Midland Credit Management

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Eduardo Tovar, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>Midland Credit Management,<br><br>Defendant. | Case No.  10 CV 2600 W WMC<br><br>**REPLY IN SUPPORT OF DEFENDANT MIDLAND CREDIT MANAGEMENT'S MOTION TO DISMISS OR STAY ON PRIMARY JURISDICTION GROUNDS**<br><br>Date:      February 28, 2011<br>Time:      N/A<br>Courtroom: 7<br><br>Judge:     Hon. Thomas J. Whelan<br><br>**NO ORAL ARGUMENT PURSUANT TO LOCAL RULE 7.1(d)(1)** |

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY BRIEF IN SUPPORT OF  MOTION
TO DISMISS OR STAY
No. 10 CV 2600 W WMC

\\\LA - 036745/000012 - 483410 v1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................. 1

II. THE COURT SHOULD DISMISS OR STAY THIS CASE PENDING THE RESOLUTION OF THE CURRENT FCC RULEMAKING PROCEEDING .................................................................................................... 3

    A.   Plaintiff's Complaint Raises Issues That Will Very Likely Be Addressed By The FCC In Connection With The Pending NPRM ............ 3

    B.   This Is The Type Of Case Which Courts Regularly Stay or Dismiss On Primary Jurisdiction Grounds ................................................................... 5

III. CONCLUSION ..................................................................................................... 8

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- i -

REPLY BRIEF IN SUPPORT OF MOTION
TO DISMISS OR STAY
No. 10 CV 2600 W WMC

\\\LA - 036745/000012 - 483410 v1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*American Mining Congress v. EPA*,
　965 F.2d 759 (9th Cir. 1992)...................................................................................... 1, 4

*Charvat v. Echostar Satellite, LLC*,
　-- F.3d --, 2010 WL 5392875 (6th Cir., Dec. 30, 2010)..................................................... 3, 6, 7

*Charvat v. Echostar Satellite, LLC*,
　--F.3d --, 2010 WL 539875 (6th Cir., Dec. 30, 2010)............................................................. 5

*Clark v. Time Warner Cable*,
　523 F.3d 1110 (9th Cir. 2008) ................................................................................. 5, 6, 7

*Kappelman v. Delta Airlines, Inc.*,
　539 F.2d 165 (D.C. Cir. 1976) ......................................................................................... 5

*Michal Communications, Inc. v. Sprint Telemedia, Inc.*,
　1 F.3d 1031 (10th Cir. 1993).......................................................................................... 7

*Navistar Int'l Transp. Corp. v. U.S. E.P.A.*,
　941 F.2d 1339 (6th Cir. 1991) ......................................................................................... 4

*Southern New England Telephone Co. v. Global NAPS, Inc.*,
　2005 WL 2789323 (D. Conn. 2005) ................................................................................. 5

*Southwestern Bell Telephone L.P. v. Vartec Telecom, Inc.*,
　2005 WL 2033416 (E.D. Mo. 2005) ................................................................................. 5

*Waudby v. Verizon Wireless Services, LLC*,
　2007 WL 1560295 (D. N.J. 2007).................................................................................. 4, 7

**STATUTES**

15 U.S.C. § 1692 .................................................................................................................. 7

47 U.S.C. § 151 .................................................................................................................... 8

47 U.S.C. § 227 .................................................................................................................... 8

47 U.S.C. § 227(a)(1) ............................................................................................................ 1

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

REPLY BRIEF IN SUPPORT OF MOTION
TO DISMISS OR STAY
No. 10 CV 2600 W WMC

\\\LA - 036745/000012 - 483410 v1

## I. INTRODUCTION

In his opposition, Plaintiff misrepresents the basis of Midland's motion to dismiss or stay this case on primary jurisdiction grounds. Midland is <u>not</u> asking the Court to dismiss or stay this case simply because the FCC is considering adopting a rule that would require companies to obtain express written consent prior to placing autodialed calls to consumers. Rather, the Court should abstain because in ruling on the currently pending Notice of Proposed Rulemaking ("NPRM") relating to the proposed new consent rule, the FCC will address issues that are critical to this case, namely whether the Telephone Consumer Protection Act ("TCPA") applies to debt collection calls, and whether the "predictive dialers" used by debt collectors and other non-telemarketing businesses – which dial preprogrammed numbers, not random or sequentially generated numbers – constitute "automatic telephone dialing systems" as defined by the TCPA.[1]

These issues are before the FCC because they are inextricably bound up with the proposed new consent rule. As explained in Midland's motion, the new consent rule, if adopted, would severely curtail the ability of debt collectors and other businesses, such as retailers and financial institutions, to use automatic dialing technology to contact consumers. Concerned about this potential result, a wide array of interested parties, including eleven members of Congress and several federal agencies, filed formal comments in response to the NPRM. These comments urged the FCC to revise its interpretation of "automatic telephone dialing system" so as to exclude predictive dialers from the TCPA's restrictions on autodialed calls. The FCC <u>must</u> address these comments when it acts upon the NPRM.[2]

Plaintiff does not dispute that the central issue in this case is whether the debt collection calls he allegedly received from Midland violate the TCPA. Thus, to adjudicate

---

[1] The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).
[2] *See, e.g., American Mining Congress v. EPA*, 965 F.2d 759, 771 (9th Cir. 1992) (federal regulatory agencies are required to address "significant comments," *i.e.*, "those which raise relevant points and which, if adopted, would require a change in the agency's proposed rule," in connection with their rulemaking activities).

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

REPLY IN SUPPORT OF MOTION TO DISMISS OR STAY
No. 10 CV 2600 W WMC

\\\LA - 036745/000012 - 483410 v1

1  Plaintiff's claims, the Court will necessarily have to decide whether Midland's system
2  falls within the TCPA's definition of an "automatic telephone dialing system." If this
3  case proceeds while the FCC is reconsidering its definition of "automatic telephone
4  dialing system", there is a risk that this Court may issue rulings that are inconsistent with
5  the FCC's ultimate decision. For example, this Court may rule that the equipment
6  Midland uses to call delinquent debtors, such as Plaintiff, falls within the TCPA's
7  definition of "automatic telephone dialing system" while the FCC may decide that this
8  same type of equipment does <u>not</u> fall within the statute.

9  Plaintiff offers no justification for pushing forward with this case despite this risk.
10 Plaintiff does not dispute, nor can he, that abstention on primary jurisdiction grounds is
11 appropriate where, as here, a pending lawsuit raises issues that are currently before a
12 federal agency in connection with a pending rulemaking proceeding. Instead, he simply
13 argues that he did not consent to receive automated calls from Midland on his cell phone,
14 and points out that there is already an FCC rule defining "consent" in the context of debt
15 collection calls. But this is a non-sequitur. As exhaustively explained in Midland's
16 motion, the FCC is considering a <u>new</u> consent rule, and it is because that new rule could
17 severely impact debt collectors (and other non-telemarketing businesses) that the FCC has
18 been asked to consider ways to exempt them from the TCPA's restrictions, for example,
19 by revising its definition of "automatic telephone dialing system."

20 Plaintiff accuses Midland of attempting to impose a "standstill" on the court system
21 by asking this Court to defer to the FCC's rulemaking process. But Midland is not asking
22 that this case be put on hold indefinitely. The NPRM was issued over a year ago and the
23 comment period closed nine months ago.[3] It is highly likely that the FCC will rule on the
24 NPRM this year. The most efficient course of action is to stay this case until the FCC
25 provides guidance on the key issue of whether predictive dialers such as those used by
26 Midland are "automatic telephone dialing systems" pursuant to the TCPA. This will

---

[3] *See* RJN, Ex. 1, p. 1 (NPRM adopted on January 20, 2010; Comment Date: 60 days after date of publication in Federal Register; Reply Date: 30 days after Comment Date).

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

REPLY BRIEF IN SUPPORT OF MOTION
TO DISMISS OR STAY
No. 10 CV 2600 W WMC

\\\LA - 036745/000012 - 483410 v1

prevent the risk of a court ruling that is inconsistent with the FCC's decision, and the concomitant risk of further regulatory uncertainty on this issue. Significantly, less than two months ago, the Sixth Circuit Court of Appeals invoked the primary jurisdiction doctrine and referred to the FCC a question of statutory interpretation arising under the TCPA, noting that the FCC had the authority and expertise to interpret the TCPA, and explaining that deferring to the agency would promote uniformity and regulatory certainty.[4] This reasoning is equally applicable here. Accordingly, Midland respectfully requests that the Court dismiss or stay this case on primary jurisdiction grounds pending the FCC's final decision on the NPRM.

## II.  THE COURT SHOULD DISMISS OR STAY THIS CASE PENDING THE RESOLUTION OF THE CURRENT FCC RULEMAKING PROCEEDING

### A. Plaintiff's Complaint Raises Issues That Will Very Likely Be Addressed By The FCC In Connection With The Pending NPRM

Nowhere in his opposition does Plaintiff dispute that resolving this case will require the Court to determine whether the TCPA applies to debt collection calls, and whether predictive dialers, such as those used by debt collectors, are "automatic telephone dialing systems" as defined in the TCPA. These very issues are currently before the FCC in connection with the pending NPRM.

As explained in Midland's brief in support of its motion, the NPRM announced the FCC's plans to, among other things, require sellers and telemarketers to obtain express written consent from consumers prior to making automated calls – even where there was an established business relationship between the caller and the consumer. Request for Judicial Notice in support of Motion to Dismiss or Stay ("RJN"), Ex. 1, p. 2. The proposed new consent rule drew an avalanche of comments from government agencies, industry associations, trade groups, private businesses, and members of Congress who explained that the proposed new rule would be untenable if applied to non-telemarketing

---

[4] *Charvat v. Echostar Satellite, LLC*, -- F.3d --, 2010 WL 5392875 (6th Cir., Dec. 30, 2010).

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS OR STAY
No. 10 CV 2600 W WMC

\\\LA - 036745/000012 - 483410 v1

businesses, such as debt collectors (which use automatic dialing systems to ensure compliance with statutory restrictions on telephone calls to consumers). Many of these commentators urged the FCC to address this problem with the proposed rule by clarifying that the TCPA's restrictions do not apply to debt collection calls, or revising its interpretation of "automatic telephone dialing system" so as to exclude predictive dialers used by debt collectors and non-telemarketers. *See, e.g.,* RJN, Ex. 8, DEPARTMENT OF EDUCATION COMMENTS ON PROPOSED CHANGES TO FCC REGULATIONS, p.2; RJN, Ex. 9, COMMENT TO PROPOSED AMENDMENTS TO THE TELEPHONE CONSUMER PROTECTION ACT REGULATIONS, DEPARTMENT OF THE TREASURY, pp. 1-2; RJN, Ex. 10, ACA INTERNATIONAL'S COMMENT TO THE PROPOSED AMENDMENTS TO THE TCPA REGULATIONS, pp. 4-23, 60-63; RJN, Ex. 11, COMMENTS OF THE NATIONAL RETAIL FEDERATION, pp. 2-3; RJN, Ex. 12, December 3, 2010 Letter to the FCC from Rep. Jim Matheson, et. al., p. 2; RJN, Ex. 13, COMMENTS OF JP MORGAN CHASE & CO., pp. 17-20; RJN, Ex. 14, COMMENTS OF THE FINANCIAL SERVICES ROUNDTABLE, THE AMERICAN BANKERS ASSOCIATION, AND THE CONSUMER BANKERS ASSOCIATION, pp. 25-28; RJN, Ex. 10, ACA COMMENTS, pp. 52-57; RJN, Ex. 11, NAT'L RETAIL FED. COMMENTS, p. 3; RJN, Ex. 15, COMMENTS OF WELLS FARGO & CO., pp. 19-21. *See also* Midland's Memorandum of Points and Authorities in support of Motion to Dismiss or Stay ("Midland Memo"), pp. 6:24-8:9.

The FCC will have to address these issues when it rules on the NPRM because federal agencies, such as the FCC, are <u>required</u> to address "significant comments," *i.e.*, "those which raise relevant points and which, if adopted, would require a change in the agency's proposed rule," in connection with their rulemaking activities. *American Mining Congress v. EPA*, 965 F.2d 759, 771 (9th Cir. 1992) ("the opportunity to comment is meaningless unless the agency responds to significant points raised by the public") (citing *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 35 (D.C. Cir. 1977)); *see also Navistar Int'l Transp. Corp. v. U.S. E.P.A.*, 941 F.2d 1339, 1359 (6th Cir. 1991) ("an administrative agency ….must 'respond in a reasoned manner to the comments received, to explain how

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

REPLY BRIEF IN SUPPORT OF MOTION
TO DISMISS OR STAY
No. 10 CV 2600 W WMC

\\\LA - 036745/000012 - 483410 v1

the agency resolved any significant problems raised by the comments, and to show how that resolution led the agency to the ultimate rule.'") (internal citations omitted). Here, since so many commentators have urged the FCC to clarify the scope of the TCPA and/or the definition of "automatic telephone dialing system", the FCC has to address these comments and thus is very likely to rule on these issues when it acts on the NRPM later this year.

### B. This Is The Type Of Case Which Courts Regularly Stay Or Dismiss On Primary Jurisdiction Grounds

As explained in the instant motion – and as Plaintiff does not dispute or even address – courts regularly dismiss or stay, on primary jurisdiction grounds, cases (like this one) that involve issues that are before a federal agency in connection with a pending rulemaking proceeding. *See, e.g., Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (affirming dismissal of class action complaint because issues raised therein were the subject of a pending FCC rulemaking proceeding); *Southwestern Bell Telephone L.P. v. Vartec Telecom, Inc.*, 2005 WL 2033416, *4 (E.D. Mo. 2005) (same); *Southern New England Telephone Co. v. Global NAPS, Inc.*, 2005 WL 2789323, *6 (D. Conn. 2005) (staying claims under doctrine of primary jurisdiction where a recent FCC ruling and NPRM "demonstrate that these issues are very much in flux and currently being considered by the FCC"); *Kappelman v. Delta Airlines, Inc.*, 539 F.2d 165, 171 (D.C. Cir. 1976) (doctrine of primary jurisdiction invoked where, among other things, there was an ongoing rulemaking proceeding on the general subject of the plaintiffs' complaint).

"[N]o fixed formula" exists for applying the doctrine of primary jurisdiction. *Clark*, 523 F.3d at 1115. "In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Kappelman*, 539 F.2d at 169; *see also Charvat v. Echostar Satellite, LLC*, --F.3d --, 2010 WL 539875 (6th Cir., Dec. 30, 2010) (collecting cases where courts have deferred to federal agencies on primary jurisdiction grounds, and noting that "'[T]he outstanding feature of the doctrine is . . . its flexibility permitting . . .

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

REPLY BRIEF IN SUPPORT OF MOTION
TO DISMISS OR STAY
No. 10 CV 2600 W WMC

\\\LA - 036745/000012 - 483410 v1

1 courts to make a workable allocation of business between themselves and the agencies.'")
2 (quoting *Civil Aeronautics Bd. V. Modern Air Transp., Inc*., 179 F.2d 622, 625 (2d Cir.
3 1950)).   The purpose of the doctrine is to protect agencies possessing "quasi-legislative
4 powers" that are "actively involved in the administration of regulatory statutes." *Clark*,
5 523 F.3d at 1115.  Thus, abstention on primary jurisdiction grounds is appropriate where
6 the case involves the resolution of a "particularly complicated issue that Congress has
7 committed to a regulatory agency." *Clark*, 523 F.3d at 1114.

8 Deference to the FCC under the doctrine of primary jurisdiction is appropriate
9 here.  The issues currently before this Court and before the FCC relating to the scope of
10 the TCPA and the types of equipment that fall within the statute's restrictions are complex
11 ones that require the technical and policymaking expertise possessed by the FCC.  As the
12 Sixth Circuit found in a recent case referring a question of TCPA interpretation to the
13 FCC:

> The agency has comparative expertise on the matter.  The agency, no surprise, is familiar with the regulations it prescribed . . . . and possesses expertise over the statute it implements . . . , whether that expertise comes in the form of technical experts, agency lawyers or agency staff in a position to obtain input from relevant stakeholders.

*Charvat*, -- F.3d --, 2010 WL 5392875 at *7.

Here, the FCC has previously issued rulings on these complex technical issues.  It has expertise regarding the types of automatic dialing technology used by various industries, and the record before the FCC in connection with the currently pending NPRM includes evidence regarding the functionality, capability, and uses of automatic dialing technology in the everyday operations of non-telemarketing businesses.  *See, e.g.,* RJN Ex. 16, pp. 25-31; *see also* Midland Memo at 9-10.

Moreover, regulatory and policymaking expertise is required to address the issues raised in this case.  In issuing its rules, the FCC must take into account the impact the rules will have across a wide range of businesses and industries, and balance the

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

REPLY BRIEF IN SUPPORT OF MOTION
TO DISMISS OR STAY
No. 10 CV 2600 W WMC

\\\LA - 036745/000012 - 483410 v1

1    competing policy concerns.  The FCC must also take into account overlapping regulatory
2    schemes that place other restrictions on the activities of industries subject to the TCPA –
3    for example, debt collectors rely on automatic dialing systems to comply with strict
4    liability statutes like the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §
5    1692, and similar state statutes that, among other things, govern the telephone activities of
6    debt collectors and authorize severe penalties for misdialed numbers or incorrectly timed
7    calls.  It is precisely because these technical and policy issues have such broad
8    implications that they should be decided by the FCC on an industry-wide basis, based on a
9    developed administrative record, and not in a single TCPA case.

10   Further, the fact that this case presents an issue of statutory interpretation, *i.e.*,
11   whether or not the dialing system used by Midland fits the statutory definition of
12   "automatic telephone dialing system," does not mean that it should not or cannot be
13   stayed on primary jurisdiction grounds.  In fact, it is not uncommon for courts to defer to
14   administrative agencies – such as the FCC – on questions regarding the interpretation of
15   statutes and regulations, especially where the agency has a history of ruling on the issue in
16   question, as the FCC does here.  *See, e.g., Charvat*, 2010 WL at *5-8 (invoking primary
17   jurisdiction doctrine and referring to the FCC the issue of whether a company on whose
18   behalf telemarketing calls were placed by a third party could be liable under the TCPA);
19   *Michal Communications, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031 (10th Cir. 1993)
20   (staying lawsuit pending FCC resolution of statutory interpretation issue, where the issue
21   involved "the appropriate characterization of a specific and relatively new service, in a
22   rapidly changing industry," which had already been the subject of a number of orders and
23   rulings by the FCC).  This makes sense since "[t]he main justifications for the rule of
24   primary jurisdiction are the expertise of the agency deferred to and the need for a uniform
25   interpretation of a statute or regulation."  *Waudby v. Verizon Wireless Services, LLC*, 2007
26   WL 1560295, *4 (D. N.J. 2007).

27   In sum, abstention under the primary jurisdiction doctrine is appropriate here.  The
28   "traditional factors" laid out in *Clark*, which Plaintiff does not contest, are met.  *See*

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

REPLY BRIEF IN SUPPORT OF MOTION
TO DISMISS OR STAY
No. 10 CV 2600 W WMC

\\\LA - 036745/000012 - 483410 v1

1  *Clark*, 523 F.3d at 1114.  This case will require the court to resolve an issue – whether
2  predictive dialers are "automatic telephone dialing systems" under the TCPA – that has
3  been placed by Congress in the jurisdiction of the FCC.  *See* 47 U.S.C. § 151 (granting
4  the FCC authority to "execute and enforce" the provisions of the Federal Communications
5  Act, which includes the TCPA); 47 U.S.C. § 227 (charging the FCC with administration
6  of the TCPA).  The TCPA is a statute that subjects a company's activities to a
7  comprehensive regulatory authority that requires expertise or uniformity in administration.
8  If the FCC issues a ruling on the definition of "automatic telephone dialing system," that
9  rule will apply to all industries where automatic dialing systems are used, and it will have
10 been made after careful consideration of myriad technical and policy issues that the FCC
11 is uniquely situated to address.  Because a conflicting ruling by this Court would create
12 legal uncertainty and potentially undermine the regulatory process, this is a classic case
13 where a dismissal or stay on primary jurisdiction grounds is appropriate.

## III.     CONCLUSION

For the foregoing reasons, Midland respectfully requests that the Court grant Midland's motion and dismiss or stay this case pending the FCC's ongoing rulemaking proceeding.

Dated:    February 18, 2011            HOGAN LOVELLS US LLP


                                       By:   /s/ Amy M. Gallegos
                                             Richard L. Stone
                                             Amy M. Gallegos
                                             Asheley G. Dean
                                             Attorneys for Defendant
                                             Midland Credit Management, Inc.

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

\\\LA - 036745/000012 - 483410 v1

- 8 -

REPLY BRIEF IN SUPPORT OF MOTION
TO DISMISS OR STAY
No. 10 CV 2600 W WMC